McIlvaine, J.
-The principal question in this case is, whether the means of support of a wife, who was dependent upon her husband’s labor, is, within the meaning of the statute, injured by the death of the husband caused by intoxication ?
The statute reads as follows :
“Section 7. That every husband, wife, child, parent, guardian, employer, or other person who shall he injured in person or property or means of support by any intoxicated person, or in consequence of the intoxication, habitual or *362 otherwise, of any person, such wife, child, parent, guardian, employer, or other’ person, shall have a right of action in his or her otvn name, severally or jointly, against any person or persons, who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons; and the owner of, lessee, or person or persons renting or leasing any building or premises, having knowledge that intoxicating liquors are to be sold therein in violation of law, or having leased the same'for other purposes, shall knowingly permit intoxicating liquors to be so sold in such building or premises, that have caused the intoxication, in whole or in part, of such person or persons, shall be liable severally or jointly with the person or persons selling or giving intoxicating liquors aforesaid, for all damages sustained, as well as exemplary damages; and a married woman shall have the same right to bring suits, and control the same, and the amount recovered, the same as a feme sole.”
Ry the common law, it is clearly settled that actions for personal injuries abate by death, and can not be revived or maintained by the executor or by the heir. And if the law does not afford a remedy to the creditor or the heir, for a pecuniary injury resulting from death, it is difficult to perceive a reason why a remedy should be allowed to one sustaining any other relation to the deceased.
In Baker v. Bolton, 1 Campbell, 493—an action for injuries to the plaintiff'aud his wife from which she had died—Lord Ellenborough said : “ The jury could only take into consideration the bruises which the plaintiff himself had sustained, and the loss of his wife’s society and the distress óf mind he had suffered on her account from the time of the accident till the moment of her dissolution. In a civil court, the death of a human being could not be complained of as an injury ; and in this case the damages as to the plaintiff’s wife must stop with the period of her existence.”
In support, of the doctrine thus laid down by this eminent common law jurist, it may be said that, previous thereto, the books of the common law show no instance in *363 which such damages were claimed, and this decision re'-' mained unquestioned in England until the year 1873, when the doctrine was reaffirmed in Osborne v. Gillett, 8 Law Reports, Exch. Cases, which was an action by a master for an injury which caused the death of his servant.
In this country, the question has been brought more frequently before the courts, and although the decisions have not been entirely uniform, unquestionably, both in number and authority, they sustain the doctrine of Baker v. Bolton. The latest case in which the authorities are Reviewed, is Mobile Life Ins. Co. v. Brame, decided by the Supreme Court of the United States, on the 21st of January, 1878, and reported in 95 U. S. Rep. 754, in which- Hunt, J., uses the following language : “ The authorities are so numerous and so uniform to the proposition, that by the common law no civil action lies for an injury resulting in death, that it is impossible to speak of it as a proposition open to question.”
In this state, the point has not been adjudicated; but we think the doctrine has been recognized by the legislature in the enactment of March 28, 1851 (49 Ohio L. 117), entitled “ an act requiring compensation for causing death by wrongful act, neglect, or default,” by which, under certain conditions and limitations, an action is given to the-personal representative for the benefit of the widow and next of kin of the deceased. Before the passage of this-statute, an action for pecuniary loss, resulting from the death of a human being, was unknown in our practice, and ever since, the only suits for such loss have been prosecuted under its provision. This statute has always been regarded as an innovation upon the principles of the common law,, and as affording the only civil remedy for an injury caused by death.
The seventh section of the liquor act, above quoted, was-also an innovation upon the common law; as, before its enactment, there was no action for an injury caused by an intoxicated person, or in consequence of the intoxication,, against the person who caused the intoxication. But since. *364 the action is thus given by the statute, the question is, whether, in view of the state of the law as it existed at the date of its passage, the terms of the section should be so construed as to extend the remedy to damages resulting from the death of the person intoxicated?
Injuries “ by any intoxicated person, or in consequence of the intoxication,” are the terms of the statute; and it is contended that if intoxication causes death, and death causes injury, the latter is within the meaning of the act. On the other hand it is contended, that as the legislature must be presumed to have known the state of the common law, and the extent of the innovation by the act of 1851, if a further innovation had been intended, such intention would have been expressed in unmistakable terms. We incline to the latter view.
Indeed, where the injury to be compensated consists in the loss of labor, it is at least paradoxical to say that labor which could not be performed during the life of the laborer is included. And, again, in construing the words of the statute applicable to the case before us, it might be said that the action can be maintained only for an injury to means of support of the plaintiff, as wife of the person intoxicated, and not for an injury sustained by her as his widow. She had an interest in his labor and in his capacity to labor, as a means of support, during his life; but after his death this means of support no louger existed, and was not the subject of injury or diminution.
But to avoid any charge of hypereriticism, we place our decision upon the ground that in view of the previous state -of the law, and the mischief sought to be remedied, we can find no expression in the statute that indicates an intention on the part of the legislature to bring the loss of labor caused by the death of the person intoxicated within' the meaning of the term “ means of support,” for an injury to which the right of action is given by the statute.
The uncertainty, if not impossibility, of estimating the value of human life, or, in other words, the pecuniary injury resulting from its destruction, undoubtedly was a rea *365 son why the common law gave no remedy. Hence, in every instance in which a remedy has been given by the statute, great care has been exercised in guarding against abuse. Our own statute of 1851, like those of other states where the common law is recognized, imposes restrictions on the right to sue, limits the amount of recovery, designates the party in whose name the action must be prosecuted, and directs the disposition of the amount recovered among the intended beneficiaries. These conditions and limitations, are not only manifestations of legislative wisdom,but would seem to be demanded by common prudence; whereas, in the statute before ns, these wise and prudent precautions are wholly wanting. Under it, a multiplicity of actions for the same wrong is authorized, and the amount of recovery is unlimited. "When the terms of the statute under consideration are considered in the light of these circumstances, we are fully satisfied that the legislature did not intend to give the plaintiff' below an action for an injury resulting-from the death of her husband.

Judgment reversed arid cause remanded.